OUTLET EMBROIDERY COMPANY, INC., Respondent, *v.* DERWENT MILLS, LTD., Appellant.

(Argued June 2, 1930; decided July 8, 1930.)

*Leo C. Weiler* for appellant. The contract by reason
of the failure to definitely fix the price is an illusory
contract or *nudum pactum.* (*Ansorge* v. *Kane,* 244 N. Y.
395; *Clark Paper & Mfg. Co.* v. *Stenacher,* 236 N. Y.
312; *St. Regis Paper Co.* v. *Hubbs & Hastings P. Co.,* 235
N. Y. 30; *Sun P. & P. Assn.* v. *Remington P. & P. Co.,*
235 N. Y. 338; *Varney* v. *Ditmars,* 217 N. Y. 223; *United
Press* v. *New York Press Co.,* 164 N. Y. 406; *Mayer* v.
*McCreery,* 119 N. Y. 434; *Royal Bank of Canada* v.
*Williams,* 220 App. Div. 603; *Blackwell* v. *Glidden Co.,* 208
App. Div. 317; *Dairymen's League* v. *Holmes,* 207 App.
Div. 429; *Mandel* v. *Guardian Holding Co., Inc.,* 200
App. Div. 767; *Canet* v. *Smith,* 173 App. Div. 241; *Lambert* v. *Hays,* 136 App. Div. 574; *Bluemner* v. *Garvin,*
120 App. Div. 29.) The price was not a " firm price."
The stated possibility of change inhered in the contract,
qualified the so-called " firm price " at all times and
rendered the price indefinite. A change of price pursuant to the stated possibility of change was not
a condition subsequent. (*Poel* v. *Brunswick-Balke-
Collender Co.,* 216 N. Y. 310; *First Nat. Bank* v. *Jones,*
219 N. Y. 312; *Wayne Co. Produce Co.* v. *Duffy-Mott Co.,*

244 N. Y. 351; *Solomon Tobacco Co.* v. *Cohen*, 184 N. Y. 308; *Kerber Straw Hat Corp.* v. *Lincoln*, 134 Misc. Rep. 211.) The contract is not one in which the price may be made certain by other facts which are established or may be made certain. (*Keystone Hardware Corp.* v. *Tague*, 246 N. Y. 79; *Fraker* v. *Hyde & Sons*, 135 App. Div. 64; *Franklin Sugar Refining Co.* v. *Lipowicz*, 247 N. Y. 465; *Von Reitzenstein* v. *Tomlinson*, 249 N. Y. 60; *New York Oversea Co.* v. *C. J. & S. A. Trading Co.*, 206 App. Div. 242.)

*Solon J. Liebeskind* for respondent. The agreement definitely states the price. (*Nassau Supply Co.* v. *Ice Service Co.*, 252 N. Y. 280; *Cohen & Sons* v. *Lurie Woolen Co.*, 232 N. Y. 114; *Franklin Sugar Refining Co.* v. *Lipowicz*, 247 N. Y. 465; *San Remo Copper Mining Co.* v. *Moneuse*, 149 App. Div. 26; *Thuman* v. *Clawson & Wilson Co.*, 211 App. Div. 507.) Even if there was uncertainty in this provision of the defendant's letter with regard to the tariff revision, it must be disregarded as having no effect on the specific price stated in the agreement. (*Howell* v. *Garrett & Co.*, 218 App. Div. 322; *Saratoga State Waters Corp.* v. *Pratt*, 227 N. Y. 429; *Rosenberg Bros. Co.* v. *Buffum Co.*, 234 N. Y. 344; *N. E. D. Holding Co.* v. *McKinley*, 246 N. Y. 44.) The surrounding circumstances must be considered in construing the agreement. The agreement must also be construed in favor of the plaintiff, as it was the defendant who prepared it. (*Sattler* v. *Hallock*, 160 N. Y. 301; Hammon on Contracts, p. 89; *Aldrich* v. *New York Life Ins. Co.*, 235 N. Y. 223; *Gillett* v. *Bank of America*, 160 N. Y. 555; *Stevens* v. *Van Wagoner Linn Construction Co.*, 165 App. Div. 45.)

CARDOZO, Ch. J. The question to be determined is whether a complaint is sufficient, and this depends upon the question whether documents made part of it contain the essentials of a contract.

The defendant, by Brucks & Peyser, its agents, wrote the plaintiff as follows: *"June 15, 1929.*

" OUTLET EMBROIDERY Co.,
  "412 6th Avenue,
      "New York City.

" GENTLEMEN: Enclosed please find copy of your order placed with us today, terms on same 3/10 days, delivery as soon as possible.

" We have cabled this order today to England as these goods will be made up special for you.

" Please send us your confirmation of same by return mail.

" Also note that the price of $3.10 per box on your Fil D'Angora brand which we are to ship to you is subject to change pending tariff revision.

" Yours very truly
    "BRUCKS & PEYSER
      "MORELL PEYSER.

" All Prices Subject to Change Pending Tariff Revision."

Accompanying this letter was an order specifying quantities and colors, and repeating the statement that the price was to be $3.10 per box. The plaintiff, on receipt of the letter and its inclosure, made answer as follows:

*"June 17, 1929.*

" BRUCKS & PEYSER,
  " 100 Fifth Avenue,
      "New York, N. Y.

" GENTLEMEN: Received your letter dated June 15, 1929, enclosing copy of my order.

" We confirm the same as requested.

' We hope you will deliver the merchandise as soon as possible and avoid last seasons delays.

" Very truly yours,
  "OUTLET EMBY. SUPPLY CO., INC.
      "per: A. DRATLER."

Three days later (June 20, 1929) the defendant canceled its acceptance, and notified the plaintiff that it would refuse to make delivery.

The plaintiff sues for the damages resulting from the refusal. The defendant insists that since the price was subject to change pending revision of the tariff, the agreement, though in other respects complete, was inchoate and abortive ( *United Press* v. *New York Press Co.*, 164 N. Y. 406; *Sun P. & P. Assn.* v. *Remington P. & P. Co.*, 235 N. Y. 338).

The letters between plaintiff and defendant were from one merchant to another. They are to be read as business men would read them, and only as a last resort are to be thrown out altogether as meaningless futilities (*Cohen & Sons, Inc.*, v. *Lurie Woolen Co.*, 232 N. Y. 112, 114; *Solter* v. *Leedom & Worrell Co.*, 252 Fed. Rep. 133). Read the privilege of change with inflexible adherence to its form, and one turns it into nonsense. If the change of price, to be valid, must be declared while revision is still pending, no change may be permitted after the revision is accomplished, which is the very time of all when a change will be essential. To read the reservation thus is to rob it of its efficacy as an implement to be used in furtherance of a business purpose. In the transactions of business life, sanity of end and aim is at least a presumption, albeit subject to be rebutted. The defendant like the plaintiff supposed that in signing these documents it was doing something understood to be significant and serious. It not only accepted the plaintiff's order, but it asked the plaintiff to confirm the terms of the acceptance, and followed this with a cable of the order to its manufacturer abroad. Was it all sound and fury, signifying nothing?

If literalness is sheer absurdity, we are to seek some other meaning whereby reason will be instilled and absurdity avoided. In June, 1929, Congress was debating a new tariff, and the debate continued for a year. Of this we take judicial notice. During the period of

suspense, an importer could not be sure whether goods previously ordered from abroad would arrive in the United States before the change or after. If they did not arrive till after, the prices would be inadequate to the extent of the new duties. In the setting of these notorious facts the reservation now in question was written and accepted.

"All prices subject to change pending tariff revision." We think there is mere fatuity in a construction of the writing that would turn this reservation into a privilege of arbitrary change, at any time or for any reason, with change of tariff or without. No seller, drafting such a writing, would expect the customer receiving it to understand it in that way (*Moran* v. *Standard Oil Co.*, 211 N. Y. 187, 196; American Law Institute, Restatement of Law of Contracts, §§ 223, 232). No buyer would so read it. He would paraphrase the writing thus: "A change of price there may have to be if the tariff is revised. 'Pending such revision,' the buyer will have to take the risk that the price may be increased by the measure of the duty added." In the setting of the occasion, no other interpretation was possible for any reasonable mind. This being so, the court may fix the meaning as if the inference were one of law (Williston, Contracts, vol. 2, § 616, p. 1194).

We find it needless to determine whether the buyer would have been at liberty, if a revision of the tariff had been followed by a change of price, to declare the bargain off, or would be deemed to have assented by implication to the payment of another price, the one theretofore named but augmented by the duty. If the second be the true construction, a known and established standard has fixed the price payable in every possible contingency (*Franklin Sugar Refining Co.* v. *Lipowicz*, 247 N. Y. 465). If the first construction be preferred, there is still no failure of a contract, for revision did not follow until long after the time when performance became due. In that

view of the meaning, there was a valid and perfected contract, though subject to a privilege of cancellation in a specified contingency (*Cohen & Sons, Inc.,* v. *Lurie Woolen Co.,* 232 N. Y. 112; Williston, Sales, vol. 1, § 8). No doubt there would be a risk in closing on such terms, yet a risk, after all, not inordinate or incredible. Buyer and seller may have had faith in their ability to come together as to terms if the seller was insistent that because of tariff changes the price should be increased. The increase would not be possible unless the change was an accomplished fact. Whatever loophole was left, whatever chance that the buyer might use the privilege of cancellation harshly, was of the seller's own creation, since the form of the agreement had been drafted by its agents. Theirs, and not the buyer's, is the blame, if there was improvidence or folly.

The complaint might better have stated more precisely the pleader's construction of writings so confusing. Even if this be granted, the construction urged by the defendant is so plainly unreasonable as to justify us in holding that it is to be rejected altogether. Alternative shades of meaning may remain. There is still a true contract, whichever shade shall be accepted.

The order should be affirmed with costs, and the question certified answered " yes."

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Order affirmed, etc.